**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | | |
|---|---|---|
| **SENECA L. PATTERSON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **Civil Action No. 1:08-CV-109-C** |
| | § | **ECF** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | **Assigned to United States** |
| Defendant. | § | **Magistrate Judge** |

**MEMORANDUM ORDER AND OPINION**

**THIS CASE** is before the court upon Plaintiff's complaint filed September 3, 2008, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Plaintiff filed a brief in support of her complaint on November 26, 2008, and Defendant filed a brief on December 23, 2008. The parties consented to having the United States magistrate judge conduct all further proceedings in this case on September 10, 2008 (Doc.7), and October 29, 2008 (Doc. 17). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed with prejudice.

**I.   STATEMENT OF THE CASE**

Plaintiff filed an application for SSI benefits on April 1, 2004, alleging disability beginning November 1, 1998. Tr. 34. Plaintiff's application was denied initially and upon reconsideration. Tr. 34, 49-54, 57-60. Plaintiff filed a Request for Hearing by Administrative Law Judge on

December 13, 2004, and this case came for hearing before the Administrative Law Judge ("ALJ") on February 27, 2006. Tr. 34, 61, 351-74. Plaintiff, represented by an attorney, testified in her own behalf. Tr. 34, 354-66. Carol S. Bennett, a vocational expert ("VE"), appeared and testified as well. Tr. 366-73. The ALJ issued a decision unfavorable to Plaintiff on May 15, 2006. Tr. 32-42.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff had not engaged in substantial gainful activity at any time relevant to this decision. Tr. 36. Plaintiff has "severe" impairments, including mixed bipolar disorder and borderline personality disorder. *Id*. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 37. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. Tr. 40.

The ALJ found that Plaintiff could not return to her past relevant work as a fast food worker or telemarketer. *Id*. He noted that Plaintiff was considered a "younger individual" with at least a high school education. 20 C.F.R. §§ 416.963, 416.964; Tr. 40-41.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of a reduced range of medium work activity, and thus implicitly assumed that Plaintiff could perform light and sedentary level work as well. The ALJ incorporated the following limitations into his RFC finding: Plaintiff should not be required to balance more than occasionally; work at unguarded heights or near unguarded hazardous mechanical equipment; work with more than a mildly decreased ability to maintain concentration and attention;

understand, remember, and carry out more than detailed, non-complex instructions; have more than superficial interaction with co-workers; or interact with the public. Tr. 37, 40. Having found that Plaintiff could not perform the full range of work at the medium exertional level, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 41. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of cleaner, with two million jobs nationally; housekeeper, with 170,000 jobs nationally; and routing clerk, with 50,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 41-42.

Plaintiff submitted a Request for Review of Hearing Decision/Order on June 14, 2006. Tr. 79-80. On December 4, 2006, the Appeals Council remanded this case to an ALJ for further proceedings.

The ALJ held a supplemental hearing on November 13, 2007. Tr. 17, 375-91. Plaintiff, represented by an attorney, again testified in her own behalf. Tr. 17, 379-85. Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 386-91. The ALJ again issued a decision unfavorable to Plaintiff on February 25, 2008. Tr. 14-26.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff had not engaged in substantial gainful activity since April 1, 2004. Tr. 19. Plaintiff has "severe" impairments, including mixed bipolar disorder and borderline personality disorder. *Id*. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 20.

Therefore, the ALJ was required to determine whether Plaintiff retained the RFC to perform her past relevant work or other work existing in the national economy.

The ALJ noted that pain has never been a component of Plaintiff's allegation of disability and was therefore not at issue in this matter. The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. Tr. 23-24. The ALJ found that Plaintiff could not return to her past relevant work as a fast food worker or telemarketer. Tr. 24. He noted that Plaintiff was considered a "younger individual" with at least a high school education. 20 C.F.R. §§ 416.963, 416.964; Tr. 24-25.

After careful consideration, the ALJ found that Plaintiff retained the RFC to perform light work activity, and it is assumed that Plaintiff can do sedentary work as well. The ALJ incorporated the following limitations: Plaintiff should not be required to balance; work at unguarded heights or near unguarded hazardous mechanical equipment; understand, remember, and carry out more than simple instructions; have more than superficial interaction with co-workers; or interact with the public. Tr. 20-21, 25. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 25. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of office helper, with 4,200 jobs in Texas and 181,000 jobs nationally; and mail clerk, with 2,900 jobs in Texas and 84,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 26.

Plaintiff submitted a Request for Review of Hearing Decision/Order on March 14, 2008. Tr. 11-12. After a 25-day extension, the Appeals Council denied Plaintiff's request and issued its opinion on August 4, 2008, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 5-10. The ALJ's decision, therefore, became the final decision of the Commissioner.

On September 3, 2008, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial

gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy. Tr. 18, 26.

### III.  DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence and was reached through errors of law. Plaintiff alleges that the hypothetical question posed to the VE did not contain all of Plaintiff's limitations as found by the ALJ because the ALJ erred by equating a moderate compromise of concentration, persistence, and pace with limiting her to work which required her to understand, remember, and carry out only simple instructions. Tr. 25. Plaintiff also argues that the ALJ erred by failing to give the opinion of Dr. Francisco Vidal, Plaintiff's treating physician, controlling weight. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Plaintiff argues that the ALJ erred by failing to include the limitations imposed by her mental impairment in the hypothetical question posed to the VE or in the RFC finding.

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a; 416.920a. He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The ALJ must evaluate the claimant's

limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "B" criteria. A five-point scale is used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. § 416.920a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)). The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 416.920a(e)(2). The PRTF represents one way in which such findings may be documented. 20 C.F.R. § 404.1520a(e). After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s). 20 C.F.R. § 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. Pt. 404, Subpt. P, app. 1, 12.00-12.09 and 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment. *Boyd*, 239 F.3d at 705.

In this case the ALJ found that Plaintiff's mental impairments were severe. Tr. 20. He found that Plaintiff's mental impairment symptoms had mildly restricted her activities of daily living; created moderate difficulties in maintaining social functioning; caused moderate deficiencies of concentration, persistence, and pace; and had never resulted in episodes of deterioration or decompensation in work or work-like settings. Tr. 23. The ALJ specifically found that Plaintiff was "limited to understanding, remembering, and carrying out not more than simple instructions because she has 'moderate' compromise of concentration, persistence, and pace." Tr. 25. Plaintiff argues that in so finding, the ALJ erred because the finding of a moderate compromise of concentration,

persistence, and pace is not related or analogous to a functional limitation in the ability to carry out, remember, or understand more than simple instructions.

Clearly, there must be evidence in the record to support the ALJ's RFC determination. The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and the reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p. As noted in SSR 96-8p,

> RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

Plaintiff disagrees with the substance of the RFC finding regarding the limitations imposed by her mental impairments. However, the ALJ is responsible for determining a claimant's RFC at step 3. *Ripley*, 67 F.3d 557. The ALJ determined that Plaintiff's moderate limitation in concentration, persistence, and pace, as found through evaluating her mental impairment and the limitations imposed therein on functional areas necessary to perform work activity affected her RFC as a limitation to work that did not require her to understand, remember and carry out more than simple instructions. In making this determination, the ALJ appropriately evaluated the limitations

imposed by Plaintiff's mental impairments under the regulations and appropriately determined Plaintiff's RFC. Plaintiff essentially argues that any limitations found in evaluating her mental impairment must be precisely incorporated into both the RFC determination and the hypothetical question posed to the VE. She argues that the hypothetical question should have included both a moderate compromise of concentration, persistence, and pace and the avoidance of provoking stress reactions.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). While the regulations require the ALJ to evaluated the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE. The ALJ explained the reasoning for his RFC determination and incorporated the limitations found in formulating his RFC into the hypothetical question posed to the VE. The court finds that the ALJ did not err in evaluating Plaintiff's mental impairment, nor did he err in making his RFC determination or in crafting and posing the hypothetical question to the VE. The court further finds that the hypothetical

question posed to the VE reasonably incorporated all of the disabilities of the claimant recognized by the ALJ." *See Bolling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Plaintiff further argues that the ALJ erred by failing to give controlling weight to the opinion of Dr. Vidal, her treating physician. The record indicates that Dr. Vidal completed a mental impairment questionnaire form on October 5, 2005. Tr. 317-22. Dr. Vidal opined that Plaintiff was extremely limited and unable to meet competitive standards in several areas. *Id*. He also found that Plaintiff had marked restrictions of activities of daily living; marked difficulty in maintaining social functioning; extreme difficulties in maintaining concentration, persistence, or pace; and had experienced four or more episodes of decompensation within a 12-month period. Tr. 320.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating

specialist." 209 F.3d at 456.[1]  Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight.  The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled.  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).  The opinion of a treating source is generally given more weight than a non-examining source.  20 C.F.R. § 404.1527(d)(1).

In his opinion the ALJ noted that Dr. Vidal's progress notes were inconsistent with his own findings.  The ALJ noted that Plaintiff's most recent exams indicated that Plaintiff required only a very low dose of medication taken every other day, that she had a stable mood, and that she demonstrated no psychotic symptoms.  Tr. 23-24.  The ALJ also noted that Plaintiff has since stopped taking her medication but has remained relatively stable.  Tr. 24.  The ALJ also noted that Plaintiff underwent a consultative psychological examination in August 2004.  Tr. 22.  The ALJ found that Dr. Vidal's conclusions were substantially inconsistent with his own findings and the Plaintiff's testimony.

Good cause to disregard the opinions of a treating physician is found where such opinions "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir.

---

[1] In unpublished decisions the Fifth Circuit has noted that the ALJ need not consider these six factors when there is competing first-hand medical evidence and where the ALJ finds that one doctor's opinion is more well-supported than that of another treating or examining physician. *See*, *e.g., Ward v. Barnhart*, 192 Fed. Appx. 305, 308 (5th Cir. 2006); *Walker v. Barnhart*, 158 Fed. Appx. 534 (5th Cir. 2005).  However, this is not a case involving competing first-hand medical evidence.

2001). SSR 96-2p provides that a medical source statement from a treating source which is well-supported by medically acceptable evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight. *See* SSR 96-2p. This ruling further explains:

> It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

*Id.* The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. Tex. 1995) (internal citations and quotation omitted). "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ's opinion indicates the reasons that he did not accept Dr. Vidal's conclusions because they were inconsistent with his own treating and progress notes and with Plaintiff's testimony.

Moreover, the ALJ discussed Dr. Vidal's treating relationship with Plaintiff, discussing length of treatment, nature of treatment, Plaintiff's medication regime, and specifically addressed many of Dr. Vidal's progress notes, comparing them with Plaintiff's testimony and the findings of the consultative examiner. "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton,* 209 F.3d at 453. "An ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization." *Myers,* 238 F.3d at 621 (citing *Newton*, 209 F.3d at 456).

The record demonstrates that the ALJ appropriately weighed the opinion of Dr. Vidal and discussed his reasons for failing to accord controlling weight to such conclusions. The court finds that the ALJ did not err in considering and weighing the opinion of the treating physician.

### IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that Plaintiff's complaint should be **DISMISSED WITH PREJUDICE**.

A judgment in accordance with this decision shall be entered.

**SO ORDERED.**

DATED this 28th day of September, 2009.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**